MARY B. DAY *v.* GEO. HOWARD and JOSEPH H. BAKER.

A delay by a *feme covert*, tenant in common, for three years and a few months after the death of her husband, and for seven years and a few months after the falling in of the life estate of her father, do not raise a presumption of an actual ouster by her co-tenants in common, so as to defeat her title, and under the statute of limitations bar her action.

(*Williams* v. *Lanier*, Busb. 30; *Cloud* v. *Webb*, 4 Dev. 290; *Thomas* v. *Garvan*, 4 Dev. 223, cited and approved.)

CIVIL ACTION, for the recovery of the possession of real estate, tried before *Moore, J.*, at the July (Special) Term, 1874, of EDGECOMBE Superior Court, upon the following

" CASE AGREED.

Bythel Bell, of Edgecombe county, died in 1802, leaving a will which was duly proved and recorded, and a copy of which is filed, &c. His widow and five children, to wit, Marmaduke N. Bell, Henry C. Bell, William W. Bell, Elizabeth Bell and

Margaret Bell survived him. Elizabeth Bell died soon afterward, without issue and intestate. In the year 1809, and after the death of the said Elizabeth, the said Wm. W. Bell died without issue and intestate. Afterwards the widow of said testator died. In 1806, the said Margaret Bell married Robert Joyner, she being then under the age of twenty-one years, and had by said marriage, Mary Joyner and other children, all of whom died without issue and intestate, except the said Mary.

No deed can be found of record, conveying the interest of said Margaret Joyner and her husband Robert, or either of them, in the land of which testator died seized, which descended to her as one of the heirs of said Wm. W. Bell. In a petition filed in 1810, November Term of the County Court of said county, by one William Foxhall and the said Henry C. Bell, it was alleged that the said Marmaduke N. Bell had purchased of the said Robert Joyner and wife Margaret, their share of the interest in said land, which descended from said William W. Bell, and had conveyed one-half of all the land of which said testator died seized, to the said William Foxhall. (Copies of said petition, &c., filed as part of the case, but which are not necessary to be inserted.) Henry C. Bell and William Foxhall sold the entire tract of land to James L. Battle, by deed in fee simple after 1810, but in the lifetime of Mrs. Joyner, and Battle took possession of the whole tract immediately; and the defendants and those under whom they claim, have had possession ever since, claiming the land as their own, by conveyances in fee simple from Battle and others succeeding him. Defendants claim that this in law amounts to an actual ouster. Neither said Robert Joyner nor his wife Margaret has had possession of any part thereof, since the date of said report.

The said Mary Joyner married W. H. Day in the year 1830, she being then eighteen years of age. The said Robert Joyner died in 1854, having survived his wife, the said Margaret Joyner, many years. The said W. H. Day died on the 14th

day of November, 1859. The said Mary Day survived him, and is the plaintiff in this action, which was commenced by summons on the 4th day of November, 1871.

If the Court should be of opinion, that the plaintiff is entitled to recover, and is not barred by the statute of limitation, then judgment shall be rendered in favor of the plaintiff, for such a proportion of the hereinafter described land, as the Court shall be of opinion she is entitled to.

But if the Court shall be of opinion that she is barred by the statute of limitation, then judgment shall be rendered for the defendant"

His Honor being of opinion that the plaintiff's action was barred by the statute of limitations, gave judgment accordingly in favor of defendants.

From this judgment plaintiff appealed.

*Batchelor*, for appellant.
*Perry* and *Bridgers*, contra.

PEARSON, C. J. The action "to recover possession of land and damages" under C. C. P. is a substitute for the action of " Ejectment and Trespass for mesne profits."

Ejectment could not be maintained by a tenant in common against a co-tenant unless there had been an *actual ouster*. The same rule applies to the present action.

We assume from the "case agreed" that any technical objection in respect to actual ouster is waived, and the ouster is admitted for the purposes of the action so as to present the case upon the title of the parties, growing out of the operation of the statute of limitations.

For the sake of illustration and to analyse the question, we we will suppose that Mrs. Joyner owned the whole tract in severalty. In 1810, Bell & Foxhall, upon an allegation that they had purchased the title of Joyner and wife, procure partition of the land to be made under an order of the County Court, and soon afterwards sell and convey the whole tract to

Battle, who takes possession in pursuance of his deed; and he and those claiming under him down to the defendants, have held possession of the land under these mesne conveyances without interruption until the commencement of this action.

It is clear that Mrs. Joyner had no right of entry during her lifetime, and the statute of limitations did not begin to run as to her, because her husband was entitled to an estate for his life, as tenant by the curtesy initiate. *Williams* v. *Lanier*, Busb. 30. At her death, in 1830, the title descended to Mrs. Day, subject to the life estate of Joyner. She had no right of entry and the statute of limitations did not begin to run as to her until the death of Joyner, in 1854. So she had seven years from that date, and three years from the death of her husband, in 1859, in which to sue for her land. Counting out the time from May, 1861, to January 1870, her action was commenced a little over seven years after the death of her father, and a little over three years after the death of her husband; and as these computations of time are concurrent and run together, according to the construction, *strictissi* or *jurismi* put on the statute. *Crump* v. *Thompson*, 9 Ired. 496. She is *behind time*, and her land is lost by three months delay. This is a hard case. The plaintiff was obliged, by law, to wait until the death of her father, and then she was restrained by the the inertness of her husband.

Such would be the result upon the supposition that Mrs. Joyner *owned the land in severalty*. We are to see how the question of law is affected by the fact that Mrs. Joyner and the plaintiff, as her heir, is a tenant in common with her two brothers, under whom the defendants claim, and could not maintain an action to recover an undivided part of the land until there had been an "actual ouster." So the case turns upon the question: at what time was there an actual ouster of the plaintiff, by her co-tenants, so as to divest her estate and drive her to an action?

There is a fellowship between tenants in common. The law assumes they will be true to each other; the possession of one

is the possession of all, and one is supposed to protect the rights of his co-tenants and is not tolerated in taking an adversary position unless he acts in such manner as to expose himself to an action by his fellows on the ground of a breach of fealty; that is, an actual ouster.   The tenant in possession may *talk as he pleases*, claiming the whole, and denying the title of any other as co-tenant; nay, he may receive the whole rents and profits of the land, denying the right of all other persons; but these acts of his, and this *big talk*, does not give his co-tenant a right of action—which is the gist of the matter—and is not allowed in law the effect of an " actual ouster," unless submitted to for more than ten years by one who is not under disability, and unable to assert his right.   The plaintiff was under disability of coverture, and was also unable to assert her right, for she could not sue until after the death of her father, who had an estate for life as tenant by the curtesy, and at his death, there being no actual ouster, her husband was tenant by the curtesy initiate.   *Williams* v. *Lanier, supra;* and so the plaintiff, owing to a combination of circumstances, had no right of action and no right of entry within a little more than three years before the action was commenced.

When was there an actual ouster?   The earliest period that can be supposed is at the time of the death of her husband. She was then, for the first time, relieved from the disability of coverture, and the encumbrances of life estates.   Conceding an actual ouster at that time, her right could not be barred according to the provisions of the statute of limitation, except by an adverse possession for seven years from that date, when her right of entry accrued.   Unless this effect be given to the relation of tenants in common, it will have no effect at all. Whereas, we find from the books, that very important consequences result from it.   In *Cloud* v. *Webb*, 3 Dev., 317, the effect of a tenancy in common is discussed by the late Patrick WINSTON with so much ability and the learning on the subject is so clearly set out, as to make it superfluous to say anything more, and I prefer giving him the credit of having disposed of

the subject rather than to attempt to make a *re-hash* of it by borrowing his reflections and learning upon so abstruse a subject. The decision following the line of Mr. Winston's argument declares that the estate of a tenant in common, is not defeated by the fact that her co-tenants had conveyed their shares and the grantors and those claiming under them, had held possession of the whole, claiming to be entitled to the whole, and having exclusive possession, receiving rents and profits without claim or interruption from their co-tenant. After the lapse of forty years, during which time the plaintiff was under coverture, and *fifteen years* after discoverture, before the commencement of the action, *Cloud* v. *Webb* was again before the Court. 4 Dev., 290. The decision affirms the same principles of law, but suggests, *obiter*, that if the mesne conveyances had been accompanied by a change of possession, it might have altered the result. I am not able to perceive the idea which this *dictum* intends to convey, unless it be taken in connection with *Thomas* v. *Garvan*, 4 Dev., 223, by which it is decided, the sole enjoyment of the property by a tenant in common, for a great number of years, (say twenty-one,) without claim from the co-tenant, who is *under no disability*, raises the presumption of an actual ouster.

If a tenant in common conveys to a third person, the purchaser occupies the relation of a tenant in common, although the deed purports to pass the whole tract and he takes possession of the whole; for, in contemplation of law, his possession conforms to his true and not to his pretended title. He holds possession for his co-tenant and is not exposed to an action by reason of his making claim to the whole and having a purpose to exclude his fellow.

It is evident that such a purchaser, (for instance, Battle in our case,) must be looked at in a light somewhat different from the original co-tenant under whom he claims. The obligation of fealty to his fellow, was not assumed so certainly, but was imposed upon him by the law, as an incident growing out of the connection of his bargainor. It follows he may get

rid of this obligation as soon as he can do so, according to the rules of law, without trenching upon the ground of good morals. By an analogy taken from the statute by which the time for putting an end to stale demands, and quieting titles, is reduced from twenty years (fixed by the Judges in England as the rule of the common law) to ten years, we are inclined to the opinion, that a purchaser from a tenant in common who buys and takes a deed for the whole tract, and under this deed holds exclusive possession of the whole tract for ten years, (the co-tenant being under no disability and there being no particular estate to prevent an immediate assertion of the title), acquires a good title by the presumption of an " actual ouster" and his adverse possession. That state of facts is not presented in this case, and we give no opinion.

The relation of landlord and tenant, furnishes another analogy. The fealty of a lessee to his lessor, in a term for years, forbids the lessee, or one who, in the forcible language of the books, " stands in his shoes," to deny the title of the lessor, and if he holds over, after the expiration of the term, although he claims to do so upon an independent title, to-wit: a deed in fee simple of a stranger, and holds possession without payment of rent and without interruption for an indefinite number of years, is not allowed to take any benefit therefrom, and is treated as a *tenant at sufferance*, who is not allowed to dispute the title of his lessor. The time in which such uninterrupted possession by a tenant at sufferance, is allowed to bar the action and defeat the title of the lessor, although left indefinite at common law, is fixed by statute. Bat. Rev., chap. 17, sec. 26, and is put at *twenty years*, " notwithstanding the tenant may have acquired another title, or may have claimed to hold adversely to his landlord."

We declare our opinion to be, that a delay to sue for three years and a few months after the death of her husband, and for seven years and a few months after the falling in of the life estate of her father, do not raise a presumption of an actual

ouster, by her tenants in common so as to defeat her title, and by the statute of limitations bar her action.

There is error. Judgment reversed and judgment for plaintiff, (according to the case agreed,) to be let into possession with the defendants, of one undivided ninth part of the land.

The damages for mesne profits will be ascertained by reference.

This will be certified.

PER CURIAM.                    Judgment accordingly.