ED. SHANNON, E. N. SHANNON, Mrs. A. B. TENNIS and W. O. SHANNON v. E. F. LAMB and GEORGE R. BRIGHT.

(Decided February 27, 1900.)

*Partition Proceeding—Tenants in Common—Equitable Title—Ouster—Adverse Possession—Conveyance of Whole Estate—Statute of Limitations.*

1. Where property is conveyed to a trustee to hold in trust for the sole and separate use and benefit of a married woman, her heirs and assigns, to be conveyed at any time, in such way and in such parcels or pieces as she may in writing request the trustee to do; and upon her failure in her lifetime to direct a conveyance of said property, then at her death, the said trustee shall convey the same to her children, or their representatives, share and share alike—she has no power of disposition over it, except such as is clearly given in the instrument creating the trust, and in the manner therein prescribed.

2. In such case, if she and her husband, without the knowledge or consent of the trustee and outside of the powers conferred, join in a mortgage conveying her estate, such deed is invalid; and other deeds following and based upon it convey no title.

3. One tenant in common can not make his possession adverse without an ouster, and it will take twenty years sole possession to ripen his title; should he claim under a deed purporting to convey the whole estate, in entirety, a possession under it will not defeat the rightful title of the true owner, under twenty years.

4. Since The Code, a party may recover possession upon an equitable title.

PETITION for partition, heard upon agreed facts by *Starbuck, J.,* at December Term, 1899, PASQUOTANK Superior Court.

The petitioners claimed a half interest in the real estate described, alleging that the defendant owned the other half interest.

SHANNON *v.* LAMB.

The defendants claimed sole seizure.

Upon the facts agreed, his Honor adjudged that the plaintiffs were not tenants in common with the defendants, and that the defendants were sole seized.    The plaintiffs excepted and appealed.

The facts agreed are stated in the opinion.

*Messrs. P. H. Williams,* and *E. F. Aydlett,* for appellants.
*Mr. R. O. Burton,* for appellees.

Furches, J.    This is an action for partition of land in which the plaintiffs allege that they are tenants in common with the defendants; that they are the owners of one undivided half interest in the land described, and that the defendant is the owner of the other undivided half.    The defendant denies that the plaintiffs are the owners of any part thereof, and pleads sole seizin.

Upon this state of the pleadings, the case was submitted for the judgment of the Court, upon the following facts agreed on by the parties:

1. It is admitted that William T. Muse owned the lands described in the petition on the 5th day of June, 1815, and the title is out of the State, and both parties claim under William T. Muse.

2. That William T. Muse, on the 6th day of June, 1815, conveyed the said lands to James H. Shannon and John L. Shannon equally as tenants in common.

3. That John L. Shannon conveyed his one undivided one-half of said lands on the 11th day of August, 1834, to William Shannon.

4. That J. M. Whedbee recovered judgment against William Shannon for $4,892.40, and execution was issued on

the 14th day of February, 1867, and the said one undivided one-half interest of the said William Shannon in said lot was sold under said execution by L. C. Dashields, sheriff of Pasquotank County, and purchased by Elizabeth Nash.

5. That the deed of L. C. Dashields, sheriff of Pasquotank County, under said execution to Elizabeth Nash, conveyed William Shannon's one undivided one-half interest in the said lot the 1st day of March, 1867.

6. That the said Elizabeth Nash conveyed the said undivided one-half interest in the said lot to William F. Martin on the 1st day of March, 1867, in trust for the purposes set out therein. A copy of said trust deed is marked Exhibit "A," and made a part hereof. Said trust deed was registered March 27, 1867.

7. That on the 10th day of June, 1885, Margaret Shannon and husband, William Shannon, executed to E. F. Lamb a deed of trust, marked Exhibit "B," and made a part of the facts, purporting to convey the said one undivided one-half of the said lot to secure one A. S. Conklin.

8. That on the 30th day of March, 1887, E. F. Lamb, trustee, sold under said deed of trust, the said undivided one-half interest to G. W. Cobb, deed marked Exhibit "C," and made a part hereof.

9. That James H. Shannon conveyed his one undivided one-half interest in said lot to G. W. Cobb on June 7, 1887, deed marked Exhibit "D," and made a part hereof.

10. That G. W. Cobb and wife, on the 27th day of June, 1887, executed a deed to A. S. Conklin, attempting to convey the entire lot, copy of his deed marked Exhibit "E," and make a part hereof; and the said Conklin went into immediate possession of the property.

11. That A. S. Conklin, by deed dated July 19, 1887,

attempted to convey the entire property to E. F. Lamb, who took possession thereof under his deed, a copy of which is marked Exhibit "F," and made a part of this statement, and he has remained in actual possession ever since.

12. That William F. Martin died on the .... day of January, 1880, leaving as his heirs, William Martin, who is now 46 years of age, John Martin who is now 44 years of age, R. B. Martin who is now 42 years of age, Bessie M. Martin who married John G. Wood on the .... day of ...., 1880, and who is now 40 years of age, and is still the wife of John G. Wood; C. F. Martin who is now 33 years of age, E. F. Martin who is now 27 years of age, Helen Martin who is now 23 years of age, and Pattie Martin who married Ed. Wood about 1876, and died in 1881, leaving surviving her her husband and three children, Bessie Wood, who is now 24 years of age; Kate Wood, who married one Folk, and is now 22 years of age, and Ed. Wood, who is now 20 years of age.

13. That William Shannon died in February, 1887, leaving surviving him his wife, Margaret, and their children, William O. Shannon, Ed. Shannon, Enoch N. Shannon and Jennie Shannon.

14. That Margaret Shannon died on the 23d day of October, 1895, not having remarried, and leaving surviving her her children and only heirs, William O. Shannon, Ed. Shannon, Enoch N. Shannon and Jennie, who had married A. B. Tennis before the death of the said Margaret Shannon.

15. That at the time of the death of Margaret Shannon the plaintiffs were all of full age and under no restraint, except Jennie, who is 40 years of age, but was, and is now, the wife of A. B. Tennis. It is admitted by the defendants that the debt secured in the trust marked EXA, is paid.

16. That this action was commenced July 31, 1899.

17. That the plaintiffs are the children and only heirs of Margaret Shannon.

Upon the pleadings and the facts agreed, the Court below was of the opinion that the defendant was sole seized, and gave judgment accordingly. The plaintiffs excepted and appealed.

The case was ably argued, orally and by briefs which presented many interesting questions. But after a careful examination and a full consideration of the briefs and argument of counsel, we are of the opinion that the controversy turns upon two points. And this makes it unnecessary for us to discuss the other questions presented.

The first of these questions is, whether any estate passed to E. F. Lamb, trustee, by the trust deed of the 10th of June, 1885; and the second question is, whether the plaintiffs are barred by lapse of time and the statute of limitations or presumptions.

Margaret Shannon, the mother of plaintiffs, had no interest in the land in controversy, except by and under the deed of trust and settlement made by Elizabeth Nash to W. F. Martin, dated March 1, 1867. The maker of this deed had two objects in view, and the deed to Martin was made for the purpose of accomplishing both of these objects.

The first was to secure Whidbee, a creditor of Mrs. Nash, to whom she was indebted in the sum of $2,000. The next was for the benefit of Mrs. Shannon, a daughter of Mrs. Nash, and Mrs. Shannon's children. It is admitted that the debt due Whidbee, secured in said deed, has been paid.

The deed of trust to Lamb, of June 10, 1885, by Margaret and her husband, William, was made during the lifetime of the trustee, Martin, and also during the lifetime of the hus-

band, William, who joined in its execution. But the trustee, Martin, was not consulted, knew nothing about its execution, and was in no way a party to it. The legal estate was in the trustee, Martin, at the date of the trust deed to Lamb, and Margaret and her husband, William, were both living at that time. The deed of trust made by Elizabeth Nash to the trustee, Martin, after providing for the payment of Whidbee's debt, provides as follows: "And the residue, if any, he shall hold, upon the trusts and for the purposes hereinafter set forth; upon the payment of the said note or bond herein described, either by said Elizabeth or by a sale as herein provided, all the property and estate, real and personal, remaining the said Martin shall hold in trust for the sole and separate use and benefit of Margaret Shannon, wife of William Shannon, and daughter of said Elizabeth Nash, her heirs and assigns, to be conveyed at any time in such way and in such parcels or pieces as the said Margaret may in writing request the said Martin to do; and upon failure of said Margaret in her lifetime to direct a conveyance of said property, then, at her death, the said Martin shall convey the same to her children or their representatives (should any be dead) share and share alike to each child or the representative of such child as may be dead, one share."

It is manifest from the terms of this deed of trust and settlement, that the said Margaret and her husband on the 10th of June, 1885, had no power or authority to make the deed of trust to Lamb. This it seems to us is too well settled by a long and unbroken line of decisions in this Court to be disputed. It is held in *Monroe v. Trenholm,* 112 N. C., 634, that, "Where property has been placed in the hands of a trustee for the sole and separate use of a married woman, she has no power of disposition over it, except such as is clearly

given in the instrument creating the trust and in the manner therein prescribed." This decision was affirmed in 114 N. C., 590, upon an application to rehear. The same doctrine is held in *Broughton v. Lane,* 113 N. C., 16, where the conditions in the deed of settlement are almost in the exact words contained in this deed of settlement. And the same doctrine is held in *Kirby v. Boyette,* 116 N. C., 244, where these cases are reviewed and discussed. All these cases seem to be based upon *Hardy v. Holley,* 84 N. C., 661, where it is said "that where a *feme sole* makes a deed of marriage settlement of her separate estate, whether real or personal, to a trustee for her sole and separate use, her power of disposition over the same, during coverture, is limited to the mode and manner prescribed by that instrument. And if she and her husband join in a mortgage conveying her estate without the knowledge or consent of the trustee and outside of the powers conferred, such deed is invalid."

The learned counsel who argued the case for the defendant distinctly stated that he did not intend to attack the doctrine of *Hardy v. Holley,* so firmly established by many decisions of this Court, but that he hoped to be able to distinguish this case from the doctrine established by that line of authorities. This statement was fair to the Court, and lawyer-like, as we have always found him to be. But we are unable to make the distinction that was attempted to be drawn by counsel, and we are of the opinion that the case under consideration falls directly within the doctrine held in *Hardy v. Holley,* and this line of decisions, and that the mortgage of William Shannon and his wife, Margaret, to Lamb passed no estate whatever.

This brings us to the consideration of the second question —the statute of limitations and presumptions. It is admit-

ted in the agreed state of facts that W. T. Muse once owned the land in controversy, and that he conveyed the same to J. H. Shannon and John L. Shannon, as tenants in common, in 1815; that the said J. H. Shannon continued to own his undivided one-half of said land until the 7th of June, 1887, when he sold and conveyed the same to G. W. Cobb; that John L. Shannon conveyed his undivided one-half interest in said land to William Shannon on the 11th of August, 1834; that in 1867, the sheriff of Pasquotank County sold William Shannon's undivided one-half interest in said land, under executions in his hands, as the land of William Shannon; and that Elizabeth Nash became the purchaser, who conveyed to Martin in trust, as hereinbefore stated; that Lamb, in March, 1887, sold under the deed of trust made to him, on the 10th of June, 1885, by Margaret and William Shannon, in which they attempted to convey one undivided half interest in the land, and G. W. Cobb became the purchaser at that sale. And said Cobb, having purchased the undivided one-half interest of J. H. Shannon, on the 27th of June, 1887, sold and undertook to convey the whole tract to A. S. Conklin, and on the 19th of July, 1887, the said Conklin sold and undertook to convey the whole tract to the defendant Lamb; that said Cobb, upon the purchase of J. H. Shannon's interest in June, 1887, took possession of said land, and that he and Conklin and the defendant Lamb have been in the sole possession of the same ever since that time.

So it appears that all parties claim under Muse. And there is no pretense but what those claiming under John L. Shannon were tenants in common with J. H. Shannon until he sold to Cobb in June, 1887. Therefore there could be no statute of limitations or presumptions in operation before June, 1887, and this action was commenced in July, 1899.

The deed of trust made by Margaret Shannon and her husband to Lamb being void, it follows that the other deeds following and based upon this trust deed conveyed no title. And if they should be held to be color of title, there is but twelve years possession to ripen the same into a title, which is not sufficient to divest the title of a tenant in common, which takes at least twenty years. This seems to be well-settled law in this State. *Caldwell v. Neely,* 81 N. C., 114; *Ward v. Farmer,* 92 N. C., 93. This is the general doctrine which seems to be too well settled to need citation of authority. And we did not understand the defendant to controvert this being the general rule, but he undertook to take his case out of the general rule, upon the ground that the defendant held under Cobb, through Conklin, by deeds purporting to convey the entire tract. But it is equally well settled that this fact will not benefit him. While Cobb claimed to own the whole tract, and attempted to convey the same, he acquired the moieties separately. And it is held in *Jeter v. Davis,* 109 N. C., 458, that this will not work an ouster so as to defeat the title of the other tenants, under twenty years.

In *Page v. Branch,* 97 N. C., 97, it is held that one tenant in common can not make his possession adverse without an ouster; that he is presumed to hold for his cotenant, and it will take twenty years to ripen the title, and that he is presumed to hold under his true title. Though a tenant in common may claim under a deed purporting to convey the whole estate, in entirety, a possession under it will not defeat the rightful title of the true owner, under twenty years. This is held in *Covington v. Stewart,* 77 N. C., 148; *Ward v. Farmer, supra; Hicks v. Bullock,* 96 N. C., 164; *Breeden v. McLaurin,* 98 N. C., 307; *Hampton v. Wheeler,* 99 N. C.,

SHANNON *v.* LAMB.

222; *Rascoe v. Lumber Co.,* 124 N. C., 42, and many other cases that might be cited. We therefore hold that the plaintiffs are not barred by the lapse of time and the statute of limitations and presumptions.

Taking the view of the case that we do, it is not necessary to consider the question of limitations as to the heirs of the trustee, Martin. Nor is it necessary to consider the question as to whether Margaret had a legal or equitable estate, nor whether this was held in fee simple or for life only, as it is manifest that she had no right to make a conveyance *during the life of her husband,* and it is not claimed that she ever undertook to convey after his death. Nor is it necessary to decide this question for the purpose of determining whether the plaintiffs now have both the legal and equitable estate in the land, or the equitable title, as it is held in numerous cases that, since The Code, a party may recover possession upon an equitable title. And the defendant having pleaded sole seizin, this is now substantially an action of ejectment, and subject to the same rules of practice and evidences of title as if it had been commenced for the possession. *Alexander v. Gibbon,* 118 N. C., 796. There is error, and the judgment is

Reversed.